JudgeUndebwoop,
delivered the opinion of the court.
On tee 3d of October, 1838, a paper, purporting to he a notice to Daniel Clark and others, dated the 18th of the preceding May, signed by “Fleming and Andrews, attorneys for Gale’s heirs,” inviting (hem to attend upon the meeting of commissioners appointed by the Bath circuit court, in a suit in chancery, between said Daniel Clark, «fee. as the heirs of .Benjamin Clark and the heirs of Matthew Gale, to value improvements made upon the land, from which Gale’s heirs were evicted, was iilad in tire Bath circuit court. Yarious continuances were entered, up to July, 3828, when the court rendered a judgment in favor of *314 Richard D. Gale and others, against Daniel Clark an. é ü^lers5;ii heirs of Bcnjarmn Clark, deceased, for $43 7 50 cents, and costs, it appears that in some suit in cha'.eery, st\ led “benjamin Clark’s heirs, complainants vs. Matthew Gale’s heirs, defendants,” on motion of the defendants, William Reed and six others were appointed to asse, s the Yalue of improvements made upon the premises, from which said defendants were evicted. The assessment io be made under the act of 1812, concerning occupying claimants of land. But at what time this order was made does not appear. The commissioners so appointed made a report bearing date the 21st of September, 182Í -, and the report so made constituted tj e basis of the judgment of the court. On the 5th of March, 1808, Robert D. Gale and Abijah l1} lie entered into a written contract under their hands and seals, by which it seems that said Gale had leased to Fylib one hundred aces of land, more or less, during the term of Fylle’s natural life, he rendering a bushel of Indian corn per annum rent. The agreement com eludes thus, ‘‘and the said FyiFe agrees to continue the possession of said land in the name of said Gale, and cause the sámelo be given up peaceably to said Gale at the end of said term, unless legally dispossessed by a due course of law'.” This contract states that the one hundred acres leased, is part of an entry of five hundred acres, entered in the name of Matthew Gale. A patent to .Matthew Gale for live hundred acres of land, including that leased to FyiFe is exhibited. The report made by the commissioners stales, that the land leased to Fyfíé contains one hundred and fifteen acres; worth, iu a state of nature, $>12 per acre; that Fyflb cleared seventy acres thereof, worth, for fencing and clearing, $10 per acre; that lie built one cabin, worth §TG, and one o* her cabin, worth $5; milking the aggregate value of Improvements made by FyiFe, -$715; that the land was cleared at the following periods, to-wit:' In 1801, Fy fie luid twenty fire acres cleared and fenced; in 1810, he had thirty five acres more cleared and fenced: in 1815, he had five acres more cleared and fenced; and in 1820, lie had five acres more cleared and fenced, which last live acres were cleared occasionally, in small parcels, from 1815 up to 1820; that there was no waste of timber or reduction of soil; that Gale’s heirs were evicted in June, 1820, by habere facias, but *315 1'yñe'received the rents for the balance of that year, which were assessed at 75 cents per acre for the balanee of the year, after the eviction; and that the cleared by Fyffe were worth an annual rent of $L 50 cents per acre, from 1815 up to the time of eviction, in 18’20. It was proved by several witnesses that the lands last cleared by Fyile, would have been worth more, had it not been cleared. Upon the above case, the only question is, did the court err in giving judgment for Gale’s heirs for $437 50 cents and costs.
When the landlord taa which the tenant was no Party>ancl it does not appear that the any*ciaim for improvements,the canmovefor6 a judgment* for compensaÍZvJm?tis~ under the occupantlawof
, if the tenant be entitled in portion onfL amoun, decreed for improvements, the landlord js,- quoad hoc, trustee for the tenant.
*315 The constitutionality of the occupant act of 1812, is again presented for the consideration of the court. This question is at rest, if any can be terminated by judicial decisions. It is useless to enumerate the decisions in support of it, since that rendered in 1815, in the case of Fowler vs. Halbert, IV Bibb, 52. in fire case of Bodley vs. Gaither, III Monroe, 58, this court assigned reasons why the opinion of the supreme court of the United States, in the case of Green vs. Biddle, VIII Wheaton, 1, should not possess a controlling influence and binding force upon our proceedings. In the case of Sanders’ heirs vs. Norton, IV Monroe, 465, in speaking of the act of 1812, relative to occupying claimants, the court say, ‘«the question maybe considered at rest and no longer open to discussion, until some tribunal capable of controlling this court, shall, by its mandate, set it again at large.” The same thing was re-affirmed in the case of McKinney vs. Carroll, Monroe, 97.
It is not important in this case to decide whether commissioners can, under the act of 1812, be appointed after the execution of a writ of habere facias. It does not positively appear that they were so appointed in this case, although it may be inferred. But if they were, we are inclined to believe it proper; see Craig vs. Majors, I Marshall, 187, where such an appointment was made under the act of 1797, at a term subse-quenttothat at which the judgment was rendered, and was sanctioned; see also, Smith and Denison vs. Walton, II Marshall, 25. We shall not decide what length of time after judgment of eviction, would constitute a bar, and would justify tbe court in refusing to appoint commissioners to value the improvements, &c. upon the application of the jjarty evicted.
And, in such case, a decree in favor of the landlord for improvements will, on account of the privity be- ■ tweeu Him and his tenant, bar any subsequent suit by the-tenant against the evictor for improvements.
Hoggin, for appellants.
The chief justice and judge Buckner are of opinion, that as {he judgment was only for improvements made whilst Fyfíe held under the tide of Gale’s heirs, as their tenant; and as Fyfíe seems to have been no party to the suit in chancery, and it does not appear that he asserts any claim for improvements, or that there is any collision between him and the heirs; they alone could move for a judgment in their names, for compensation for .improvements; and that if Fyfíe be entitled, in equity, to any portion of the amount decreed for improvements, the heirs, quoad hoc, are trustees for him, and that he must look to them; that the decree in favor of Gale’s heirs would, on account of the privity between them and their tenant, bar any suit by him against Clark’s heirs for improvements; and that consequently, they have no right to complain of the decree.
They are,, therefore, of opinion, that the decree was just and proper.

Judge Underwood dissenting from the majority of the court in the above case, delivered his own opinion, as follows:

It is my opinion, that the judgment in favor of Gale’s-heirs should be reversed. The first section of the occupying claimant act of 1812, requires the successful claimant to pay for improvements to the “sealer, improver or his assignee,”' when the sealer or improver supposed the land to be his own, by reason of a claim in law or equity, the foundation of which is of public record. The sealing and improving in this case, was not commenced under any claim in law or equity founded on the public records. On the contrary, a large part of the'-improvements were made by Fyffe-at a time when he had not the shadow of a title, and the residue were made by him after he took protection under thelitle of Gale’s heirs. By the contract between Gale and Fyffe, the latter was to hold and enjoy the land for life, unless evicted by paramount title.' Fyfíe whs not bound to make any improvements in his contract with Gale. He did, however, voluntarily make improvements after he had connected himself with the title of Gale’s heirs, and had reason to suppose the land was his. ibr life. For the improvements thus made, I think *317 Fyffe is entitled to compensation under the occupant act of 1812, and that Gale’s heirs have no right whatever, to ask a judgment in their favor. The object of the act, was to provide a remedy by winch the man, who, in good faith, expended his time, labor and money, in improving lands, which thereafter were taken from him by a paramount title, might obtain compensation for the value thus imparted to the land of another. It is Just, that the successful claimant should pay, because lie is enriched by the labor and expenditures of the occupant. It would be unjust to make the occupant, sustain the loss of so much time, labor and money spent, whereby another was enriched. The gain of the successful claimant, and the loss of the oc^ cupant toiling in good faith, present the true prihciplesr of the statute of 1812. Now, why should Gale’s heirs profit by Fyffe’s labor? They did not even stipulate to protect him in fhe possesson of the land. On the contrary, it is manifest from his lease, that if he was evicted by paramount title, he would, inconsequence thereof, have no redress against them for the costs of the suit by the judgment or decree in which he may have lost the land. They did not bind Fyffe-to make any improvements. The rent reserved was only nominal.
The object of the parties seems to have been, merely, to furnish Fyffe such protection in the possession as he might desire, by holding under the title of Gale’s heirs, and to give to them any advantages which might result from the statute of limitations, by getting into possession after Fyffe’s death. Under these circumstances, I cannot perceive the least propriety in paying Gale’s heirs for improvements never made by them or at their instance, and for the making of which, it does not appear that they incurred any charge or responsibility whatevér. If they are paid for them, then it seems to me, that our records will present a case, in which $.437 50 cents are placed in the pockets of the appellees, for nothing. The letter of the statute does not embrace them. They were not the seaters or improvers of the land, or the assignees of any sealer or improver. The land did not belong to them, and therefore, it can not be said they have entitled themselves to the benefit of Fyffe’s labor by permitting him to use the land.
*318 I cannot sustain the judgment in behalf of Gale't heirs upon the idea that they will, in receiving the money, hold it in trust for Fyffe. If they would be boundt by any principle of law efr equity, to account to Fyffe for the money when they get it, the same principle H; seems to me would enable Fyffe to recover from Clark’s heirs in a direct proceeding against them. I perceive no good reason for the circumlocution. As Fyffe is no party to the present proceedings, his interests can-” not be concluded by a litigation between Gale’s heirs and Clark’s heirs; and if he were yet to set up his claim against Clark’s heirs, I think it would not be a sufficient defence for them to say, they had paid Gale’s heirs, and . Fyffe must look to them.
Upon every view which I have been enabled to-take of the case, my mind has come to the conclusion, that Gale’s heirs have shown no right whatever, to be compensated for the improvements made by Fyffe, and consequently, that the judgment is erroneous.